NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

THOMAS ROACH, PETITIONER, v. YELLOW CAB, INCORPORATED, RESPONDENT.

\*　\*　\*　\*　\*　\*　\*

(1) That on December 18th, 1926, the petitioner was employed by the respondent at a weekly wage of $25 a week and commission as a chauffeur of the respondent's taxicabs in and about its business as an operator of taxicabs, and on that day the petitioner commenced work for the respondent at about four o'clock in the afternoon, took his station at the Hotel Riviera, Newark, New Jersey, and proceeded about the city on various fares from that time until stationed at the taxicab stand of the respondent at the Hudson and Manhattan railway station, Park Place, Newark, New Jersey, until he had occasion to take a fare to South Orange avenue and Norwood street, Newark, New Jersey, and after discharging the said passenger called his employers from a telephone box stationed on the corner of Stuyvesant avenue and South

Orange avenue to inquire as to whether there were any calls in the vicinity to be made, as is the custom. The petitioner was directed to go to the corner of South Orange avenue and Sanford avenue for a fare.

(2) When the petitioner arrived, he observed that the respective passenger was slightly inebriated and was about to enter another taxicab known to be what is commonly called an "independent." The prospective passenger, upon seeing the yellow cab drive up, discharged the independent cab and entered the cab owned by the respondent. The independent cab driver, the name of whom the petitioner is not aware, but whom the petitioner describes with a fair degree of certainty, resented the act of the passenger, and although not saying anything to the petitioner herein, gave the petitioner·a severe and resentful look.

(3) The petitioner was instructed by the fare to discharge him on Broad and Orange streets, Newark, New Jersey, and upon pulling his cab to a stop, petitioner noticed that the independent taxicab driver whom he encountered on South Orange avenue and Sanford avenue had followed him in the cab to Broad street. The independent driver accosted the petitioner, accused him of taking away a prospective passenger and treated him with violence. The independent driver departed with the admonishment "that he would get all that was coming to him." The petitioner then assumed his cruising and returned to the parking stand belonging to the respondent, stationed in back of the easterly wing of the· Hudson and Manhattan tube station, and while in the act of backing his cab in the rear of the Hudson and Manhattan tube station he was tripped, and while attempting to rise he was kicked in the jaw by an assailant whom he recognized as the driver of the independent cab whom he had met on two occasions earlier in the evening. The assailant fled and the petitioner pursued him, but was unable to overtake him. Petitioner then feeling a pain in his jaw went to his home, applied home solutions, and his brother, who testified in his behalf, testified to reporting the said accident that same evening to the starter in charge of the cab drivers at the

Hudson and Manhattan tube station, and the starter, who testified for the respondent, did not repute this statement.

The respondent's physician examined the petitioner a few days after the accident and the petitioner was examined by the state physician and treated by several other physicians and Dr. Guthrie, connected with the department.

In *Bryant* v. *Fissell*, 84 *N. J. L.* 72; 86 *Atl. Rep.* 458: "A leading case in this state on the question involved, holds, where the injuries arose out of and in the course of the employment with the respondent comes within the province of the Compensation act and petitioner is entitled to compensation."

To arise out of the employment, there must be a casual connection between the conditions under which the work is to be performed.

In *Emerick* v. *Slavonian Roman Greek Catholic Church*, 93 *N. J. L.* 282; 108 *Atl. Rep.* 223: John Emerick was employed by the respondent as bar tender in their saloon in Passaic. While there engaged in selling intoxicating liquors, he was shot and killed by a patron of the saloon. Judge Trenchard, in affirming the judgment of the Court of Common Pleas, stated that "where an accident is the result of a risk reasonably incident to the employment, it is an accident arising out of the employment. A risk is incidental to the employment when it belongs to or is connected with what an employe has to do in fulfilling his contract of service. It may be either an ordinary risk, directly connected with the employment, or an extraordinary risk, which is only indirectly connected with the employment, owing to the special nature of the employment."

The duties of the claimant were such that subjected him to assault by employes of rival taxicab companies or independent cab drivers. Petitioner was about his employment in the act of picking up fares when an independent taxicab driver, aroused by the act of a passenger in accepting the cab of the respondent's company in preference to his own, causing him to inflict bodily harm upon the petitioner, is an act which arose out of the employment of the petitioner. The

petitioner sustained this accident at a place where he might reasonably be.

We cannot say that merely because the accident was caused by the act of a third person, even though the act was felonious, if at the time the workman sustained the injury he was exposed thereto by the nature of his employment. *McFarlane* v. *Shaw, Court of Sessions Cases* 273, *p.* 242, *N. C. C. A.*

I find that the petitioner has sustained an accident within the meaning of the Workmen's Compensation act of New Jersey, which accident arose out of and in the course of petitioner's employment with the respondent. That intoxication was not the proximate cause thereof, nor was the injury self-inflicted.

Mr. Lehman, the starter at the respondent's cab stand at the Hudson and Manhattan tubes, was notified of the said occurrence by a brother of the petitioner shortly after the said accident occurred. Mr. Lehman, when on the stand, did not deny the same. I find as a matter of fact that the respondent had due knowledge of the accident. Mr. O'Connell testified to a conversation with the mother of the petitioner a few days after the accident, and Dr. Seidman, the respondent's physician, treated the petitioner. The only question involved, other than notice, is whether the said accident occurred while in the course of employment with respondent.

It is a well-recognized fact that there is constant rivalry between cab drivers in Newark, and from the fact that the entire episode occurred within two hours, or less, at a time when it was dark and according to the circumstances thereof as related by the petitioner and others leads me to the conclusion that the said accident occurred in and arose out of petitioner's employment with the respondent, and I find as a matter of fact that the said accident did not occur out of personal animosity. The burden of proof of this claim rests with the respondent, and he has not produced any testimony to dispute the petitioner's story and has produced no testimony to show that the said quarrel was of a personal nature. If the petitioner's story is to be believed at all, it should be believed *in toto*.

Dr. Guthrie and Dr. Dowd testified to the condition of the petitioner, on behalf of the petitioner, and Dr. Seidman on behalf of the respondent, and from all the medical testimony, from the X-rays and from the appearance of the man while on the stand, and from the condition of his jaw, I find that the petitioner has sustained fractures of the jaw, and involvment of alveolar process, and the nerves thereof.

And I find that petitioner has sustained permanent disability to the extent of twelve and one-half per cent. of the usefulness of his body.

\*  \*  \*  \*  \*  \*  \*

HARRY J. GOAS,
*Deputy Commissioner.*